FARMERS GIN, INC., F. RONALD RAYNER, TAX MATTERS PERSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Farmers Gin v. Commissioner
Docket No. 10142-93
United States Tax Court
T.C. Memo 1995-25; 1995 Tax Ct. Memo LEXIS 25; 69 T.C.M. (CCH) 1696; January 19, 1995, Filed *25 Decision will be entered for respondent. For petitioner: Wayne A. Smith. For respondent: Anne Durning. WRIGHT
WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: Respondent determined deficiencies in Farmers Gin, Inc.'s (the corporation) 1987 and 1989 Federal income tax in the amounts of $ 234,373 and $ 15,850, respectively. The sole issue for our consideration is whether section 1378(c)[1] requires the termination of the corporation's status as an S corporation as a result of the transfer of more than 50 percent of petitioner's stock. We hold that it does. FINDINGS OF FACT The facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein. At the time the petition was filed, the corporation's principal place of business was Tolleson, Arizona. F. Ronald Rayner (petitioner) is the tax matters person of the corporation. *26 The corporation was incorporated in Arizona on March 11, 1981. On July 14, 1981, the corporation elected to be treated as an S corporation. The corporation has used August 31 as its yearend for tax purposes from 1981 through the present. Each of the shareholders of the corporation file their personal income tax returns based on a calendar year. On September 30, 1983, 45 percent of the corporation's stock was transferred to new shareholders, and on September 5, 1985, an additional 15 percent of the corporation's stock was transferred to new shareholders. As a result, more than 50 percent of the corporation's stock was newly owned stock for purposes of section 1378(c). Respondent determined that because more than 50 percent of the corporation's stock was newly owned stock, the corporation lost its S corporation status pursuant to section 1378(c), and therefore the corporation has been a C corporation with a tax year ending August 31, since September 5, 1985, the date of the ownership change. In June 1990, the corporation filed Form 1128, Application for Change in Accounting Period. Respondent did not rule on the request. In April 1993, respondent timely mailed to petitioner *27 [2] a Notice of Final S Corporation Administrative Adjustment (FSAA) and determined deficiencies in the corporation's income tax for taxable years 1987 and 1989 in the amounts of $ 234,373 and $ 15,850, respectively, pursuant to the provisions of subchapter C. The deficiencies arise solely as a result of respondent's determination that the corporation's status as an S corporation was terminated on September 5, 1985, pursuant to section 1378(c). OPINION Whether section 1378(c) mandates the loss of the corporation's S corporation status under the facts of the instant case is an issue of first impression. Section 1378(c)(1) provides: A corporation which is an S corporation for a taxable year which includes December 31, 1982 * * *, shall not be treated as an S corporation for any subsequent taxable year beginning after the first day on which more than 50 percent *28 of the stock is newly owned stock unless such subsequent taxable year is a permitted year.
For purposes of this section, a permitted year is defined as: (1) A year ending December 31, or (2) any other accounting period for which the corporation establishes a business purpose to the satisfaction of the Secretary. [3]Sec. 1378(b). Petitioner argues that section 1378 does not operate to terminate the corporation's status as an S corporation, but merely *29 requires use of a permitted year. Respondent contends that pursuant to section 1378(c), the corporation became a C corporation when 50 percent of the corporation's stock became newly owned stock, and the corporation failed to adopt a permitted year. We agree with respondent. Petitioner insists that there are only three possible events that may terminate an S election, and section 1378(c) is not one of them. In support of his position, petitioner refers to the language in section 1362(c). Section 1362(c) provides: An * * * [S election] shall be effective for the taxable year of the corporation for which it is made and for all succeeding taxable years of the corporation, until such election is terminated under subsection (d).
Petitioner argues as follows: Section 1362(d) provides an exclusive list of terminating events, [4] and it is impossible to terminate a subchapter S election by any other means. Thus, if section 1378(c) provides an additional event upon which an S election may be terminated, it conflicts with section 1362(c) and creates an ambiguity. Therefore, according to petitioner, we must examine the legislative intent with respect to sections 1362(c) and *30 1378(c) to resolve the ambiguity. Finally, petitioner concludes that, based on the legislative history with respect to these two sections, Congress did not intend for section 1378(c) to provide an additional terminating event, but that Congress merely sought to require S corporations to use a permitted year. Petitioner's argument is misguided. The provisions involved in the instant case are not ambiguous, and we find no conflict between them. While section 1362(c) refers to subsection (d) to provide the circumstances under which a termination will occur, nothing in the statute suggests that these events are exclusive. Section 1378(c), on the other hand, requires that an existing *31 corporation, which experiences a 50-percent change in ownership, either adopt a permitted year or lose its S corporation status. Upon experiencing a 50-percent ownership change, the corporation in the instant case did not adopt December 31 as its taxable year, nor did it attempt to establish a business purpose to the satisfaction of the Secretary for continuing to use August 31 as its taxable year. Accordingly, we find that pursuant to section 1378(c), the corporation shall not be treated as an S corporation. Nevertheless, because of petitioner's vehement assertions that sections 1362(c) and 1378(c) are conflicting, we will look to the legislative history for additional guidance. The principal objective in interpreting any statute is to determine Congress' intent in using the statutory language being construed. United States v. American Trucking Associations, 310 U.S. 534, 542 (1940); Helvering v. Stockholms Enskilda Bank, 293 U.S. 84, 93-94 (1934). Where the statute is ambiguous, it is well established that we may look to its legislative history and to the reason for its enactment. United States v. American Trucking Associations, supra at 543-544; *32 U.S. Padding Corp. v. Commissioner, 88 T.C. 177, 184 (1987), affd. 865 F.2d 750 (6th Cir. 1989). Sections 1362 and 1378 were enacted as part of the Subchapter S Revision Act of 1982, Pub. L. 97-354, sec. 2, 96 Stat. 1669, 1672-1676, 1685-1686 (SSRA). Petitioner maintains that the intent of Congress with respect to the adoption of the SSRA, was to remove "traps" that produced unintended adverse tax consequences. According to petitioner, section 1378 is essentially such a "trap", and therefore it does not comport with the congressional intent. The legislative intent with respect to the sections at issue is twofold. While petitioner is correct in that Congress did attempt to simplify the S corporation provisions by removing traps for the unwary, Congress was equally concerned with curbing certain unintended benefits from these provisions. The House and Senate reports, which accompany the SSRA, each contain substantially similar language. See S. Rept. 97-640 (1982), 1982-2 C.B. 718; H. Rept. 97-826 (1982), 1982-2 C.B. 730. With respect to the reasons for change, the *33 reports state: The committee's bill continues the ability of small business corporations to elect a single level shareholder tax on the corporate earnings and encourages the use of these rules by eliminating unnecessary traps that exist under present law. Also, the bill tries to prevent unwarranted benefits from arising by reason of a subchapter S election. [S. Rept. 97-640, supra, 1982-2 C.B. at 720; H. Rept. 97-826, supra, 1982-2 C.B. at 732.]
One of the benefits with which Congress was concerned included "the deferral of income resulting from the selection of a taxable year for the corporation which is different from that of the majority of its shareholders". S. Rept. 97-640, supra, 1982-2 C.B. at 720; H. Rept. 97-826, supra, 1982-2 C.B. at 732. Congress sought to eliminate this unintended benefit by enacting section 1378. With respect to section 1378, the reports state: Under the bill, the taxable year of a subchapter S corporation will be required to be either a year ending December 31, or any other taxable year for which it establishes a *34 business purpose * * *. A corporation which is a subchapter S corporation during the taxable year which includes December 31, 1982, will be permitted to retain its existing taxable year so long as at least 50 percent of the stock in the corporation is owned by the same persons who owned such stock on December 31, 1982. However, to retain subchapter S status for taxable years beginning after the day on which more than 50-percent of its stock have changed ownership subsequent to December 31, 1982, the corporation will have to conform to the general taxable year rule and either use the calendar year or establish a business purpose for a different year. * * * [S. Rept. 97-640, supra, 1982-2 C.B. at 727; H. Rept. 97-826, supra, 1982-2 C.B. at 739; emphasis added.]
The language in the legislative history is entirely consistent with that of the statute. Clearly, Congress was concerned with the potential to defer income as a result of an S corporation's adopting a taxable year different from that of the majority of its shareholders. Congress, therefore, decided to restrict the choices available to an S corporation *35 with respect to its taxable year. Under section 1378(c), an existing S corporation was permitted to retain its tax year; [5] however, if the corporation experienced a 50-percent change in ownership, it effectively was treated as a new corporation, for purposes of its taxable year, and was required to adopt a permitted year. Congress intended the consequence of failure to comply with the permitted year rules to be the loss of subchapter S status. Section 1378(c) accomplishes the intended result. The corporation in the instant case continued to use a taxable year ending on August 31, while each of the shareholders of the corporation used a taxable year ending on December 31, thus deferring the recognition of income earned during September through December until the following year. This is exactly the situation that concerned Congress. *36 We agree with petitioner regarding its assertion that Congress intended to eliminate certain traps for the unwary under subchapter S. The traps that Congress was concerned with, however, generally related to income, distributions, and eligibility requirements, which could potentially result in unanticipated terminations. See S. Rept. 97-640, supra, 1982-2 C.B. at 718; H. Rept. 97-826, supra, 1982-2 C.B. at 730. We have considered petitioner's remaining arguments and conclude that they are without merit. Accordingly, we find that as a result of the transfer of more than 50 percent of the corporation's stock, the corporation's status as an S corporation was terminated under section 1378(c). To reflect the foregoing, Decision will be entered for respondent.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code in effect during the relevant period.↩
2. The original tax matters person was James M. Accomazzo; however, prior to trial Mr. Accomazzo died. Petitioner is the successor tax matters person.↩
3. At trial, the parties and the Court agreed that the issue of whether Aug. 31 is a permitted year is immaterial to the resolution of the instant case. We reserved argument on this issue because the dispute herein solely concerns whether respondent was granted the authority to terminate petitioner's S election under sec. 1378(c), or whether she is merely required to recompute the corporation's income based on a permitted year. Further, whether Aug. 31 is a permitted year is a determination to be made within the discretion of the Commissioner. Sec. 1378(b)(2)↩.
4. Under sec. 1362(d)↩, an S corporation election may be terminated: (1) By revocation of the election to be treated as an S corporation; (2) by the corporation ceasing to be a small business corporation; or (3) where passive investment income exceeds 25 percent of gross receipts and the corporation has subchapter C earnings and profits.
5. Sec. 1378(c) was repealed by the Tax Reform Act of 1986, Pub. L. 99-514, sec. 806(b)(3), 100 Stat. 2085, 2363. Under present law, all S corporations are required to use a permitted year, regardless of the year during which the S election was made. Sec. 1378(a), I.R.C. 1986↩.